IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JODI HAMMEL | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| SOAR CORP. | : | No. 14-3106 |

## MEMORANDUM

**L. Felipe Restrepo, U.S. District Court Judge**                    **February 6, 2015**

Plaintiff Jodi Hammel ("Plaintiff") brings this action against Defendant SOAR Corp. ("Defendant") alleging disability discrimination under federal law in connection with her termination from employment.[1]  Defendant has moved for summary judgment on Plaintiff's claims.  For the reasons that follow, Defendant's motion is denied.

### I.    FACTUAL BACKGROUND[2]

Plaintiff is a 45-year-old female alleging a history of back conditions, specifically degenerative disc disease and sciatica.  Joint Appendix ("JA") 0086, 0104.  In late July 2013, Plaintiff sought a job with Defendant, a drug and alcohol clinic.  JA0076, 0083, 0105, 0136, 0145.  After providing a résumé to and interviewing with Defendant's Vice President and its Project Director, Plaintiff was hired as an Administrative Coordinator.  JA0024, 0103-04, 0132, 0136, 0140, 0148-49, 0164-65.  Plaintiff was hired before her work history was verified. JA0140.

---

[1]    Defendant argues in its motion papers that summary judgment should be granted as to Plaintiff's Pennsylvania Human Relations Act ("PHRA") claim, and Plaintiff responds that her PHRA claim should survive summary judgment.  However, the Court finds no indication on the docket that Plaintiff ever filed a PHRA claim in this matter.  Plaintiff's Complaint sets forth a cause of action for "Violations of the Americans with Disabilities Act, as amended" and states that "Plaintiff will move to amend the instant lawsuit to include violations of the PHRA, which will identically mirror her ADA claims, once her administrative remedies are exhausted before the PHRC."  JA0003, 0007-08.  Plaintiff did not file an amended complaint in this matter or request leave of the Court to do so.

[2]    Unless otherwise noted, the following facts are undisputed.

On August 1, 2013, Plaintiff took a drug test, which was part of Defendant's standard hiring process.  JA0035-36, 0106, 0136, 0165.  Plaintiff also submitted a "Job Application" as part of Defendant's hiring process, which was dated August 5, 2013.  JA0021-23.  The application incorporated Plaintiff's résumé, and Plaintiff's résumé listed "Lockheed Martin" and "Inter-Stock Cabinetry" as former employers.  JA0022, 0029-30.  Plaintiff signed the Job Application, and in doing so, certified that the information provided therein was "true, correct and complete."  JA0023.

Plaintiff began working for Defendant on August 5, 2013, prior to Defendant's receipt of Plaintiff's drug test results and prior to Plaintiff's provision of reference check information for her previous employers.  JA0018, 0078, 0105-06, 0119, 0155-56.  Her duties in the Administrative Coordinator position included tasks such as filing, chart management, answering phones, and supporting reception desk functions.  JA0024, 0103-04, 0148-49.  On or within a few days of August 12, 2013, Andrea Mruk of Defendant's human resources department received the results of Plaintiff's drug test, and informed Plaintiff that she had failed.[3]  *See* JA0016-17, 0107, 0153.  Upon learning of her test results, Plaintiff thought that they could be explained by a medical procedure she had on her back the day before she took the test.  JA0106, 0119.  Plaintiff then acquired from her doctors and provided to Mruk three medical notes that documented her procedure and her current medications.  JA0015-17, 0086, 00153.  The parties dispute whether Plaintiff specifically disclosed her back conditions to Mruk or anyone employed by Defendant.  JA0106, 0113, 0150-51.  Plaintiff testifies that she disclosed her back condition

---

[3]     The parties do not appear to agree on the exact date that Mruk received the drug test results.  Plaintiff testifies that Mruk received the results on August 12, 2013.  JA0107.  Mruk testifies that she could not remember the exact date, but it was "maybe within a couple of days" of receiving medical documentation from Plaintiff; the medical documentation bears dates of August 12, 2013, and August 13, 2013.  JA0016-17, JA0153.  The parties do not appear to dispute that Mruk received the medical documentation sometime around August 12 or 13, 2013.

to Mruk when Plaintiff learned of the failed drug test, and Defendant denies any such disclosure took place.  JA0106, 0113, 0150-51, 0154.  Nevertheless, according to Plaintiff's testimony, she had been under a doctor's care for back issues for years, and these issues affected her on a daily basis.  JA0087, 0090, 0126-07.

On August 14, 2013, Mruk contacted Plaintiff to follow up on a request for Plaintiff's employment references.[4]  JA0018, 0100-02, 0155-56.  Plaintiff provided references shortly thereafter.[5]  JA0100-01, 0156.  Mruk was unable to verify Plaintiff's employment based on the reference information Plaintiff provided.  *See* JA0156-59.  Defendant then terminated Plaintiff's employment on August 15, 2013.  *See* JA0108.  According to Plaintiff, she was told that her termination was based on the failed drug test and the fact that her references did not check out.  JA0084, 0108-09, 0114-15.  According to Defendant, Plaintiff was told that she was terminated due to her falsification of references and falsification of work history.  JA0037, 0149-50.  Plaintiff argues that she was not, in fact, terminated for falsifying her work history and references and that she was terminated for her disability.  *See* Pl.'s Resp. Br. 25.  Defendant argues that Plaintiff was indeed terminated for non-discriminatory reasons.  *See* Def.'s Br. 18.

## II.   LEGAL STANDARD

A court must grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56.  A fact is considered "material" if it "might affect the outcome of the suit under the governing law."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A dispute is

---

[4]      Plaintiff alleges that she was originally told she would have until the end of August to provide employment references.  JA0101.  Then, on August 14, 2013, Mruk requested the references by the following Monday, August 19, 2013.  JA0018.  Later the same day, according to Plaintiff, Mruk called Plaintiff and told Plaintiff she needed the references by the end of the day.  JA0100-02.
[5]      The parties dispute whether Plaintiff provided the reference check forms on August 14 or 15, 2013.  JA0100-01, 0156.

"genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* In ruling on a summary judgment motion, the Court must "construe the evidence in the light most favorable to [the non-moving party]." *Zimmerman v. Norfolk S. Corp.*, 706 F.3d 170, 176 (3d Cir. 2013).

## III.   ANALYSIS

### a.   Discrimination/disparate treatment

The Americans with Disabilities Act ("ADA") prohibits an employer from discriminating against an employee on the basis of his or her disability in connection with hiring, advancement, or discharge of employees. 42 U.S.C. § 12112(a). Plaintiff claims that Defendant unlawfully terminated her on the basis of her back conditions. Plaintiff does not appear to argue, for purposes of summary judgment, that there is any direct evidence of discriminatory animus by Defendant and the parties agree that the familiar *McDonnell Douglas* burden-shifting framework applies. *See McDonnell Douglas v. Green*, 411 U.S. 792, 802-04 (1973).

### i.   *Plaintiff's prima facie case*

Under the *McDonnell Douglas* framework, Plaintiff must first establish a *prima facie* case of discrimination by demonstrating that: "(1) [s]he is a disabled person within the meaning of the ADA; (2) [s]he is otherwise qualified to perform the essential functions of the job, with or without reasonable accommodations by the employer; and (3) [s]he has suffered an otherwise adverse employment decision as a result of discrimination." *Taylor v. Phoenixville Sch. Dist.*, 184 F.3d 296, 306 (3d Cir. 1999). If Plaintiff is successful in establishing her *prima facie* case, the burden shifts to Defendant to offer a legitimate, non-discriminatory reason for the adverse employment decision. *McDonnell Douglas*, 411 U.S. at 802; *Eastman v. Research Pharms., Inc.*, 2013 WL 3949236, at *7 (E.D. Pa. Aug. 1, 2013). If Defendant offers such a reason,

Plaintiff then must provide evidence that Defendant's reason was merely pretext for discrimination. *McDonnell Douglas*, 411 U.S. at 804.

An individual will qualify as "disabled" under the ADA if he or she: has "(A) a physical or mental impairment that substantially limits one or more major life activities of such individual; (B) a record of such an impairment; or (C) [is] regarded as having such an impairment."[6] 42 U.S.C. § 12102. Only the first and third definitions (referred to as "actual" disability and "regarded as" disabled, respectively) apply to Plaintiff's claims here. With respect to actual disability, Defendant does not appear to dispute that Plaintiff's back conditions qualify as an impairment; the dispute surrounds whether Plaintiff's back conditions "substantially limit[] one or more major life activities." Typically, the question of whether an individual is substantially limited in a major life activity is one of fact. *See Cohen v. CHLN, Inc.,* 2011 WL 2713737, at *6 (E.D. Pa. July 13, 2011).

In passing the ADAAA, Congress expanded the definition of "disability," which courts had interpreted narrowly under the ADA, and stressed that the ADA should be "construed in favor of broad coverage of individuals." ADA Amendments Act of 2008, Pub. L. No. 110–325, § 4(a), 122 Stat. 3553, 3555; *see also id.* at *7 ("[T]he determination of whether an impairment substantially limits a major life activity . . . should require a degree of functional limitation that is lower than the standard for 'substantially limits' applied prior to the ADAAA.") (quotations and citation omitted). Here, Plaintiff testifies that her back issues impact her ability to walk too far, stand in one position for too long, lift boxes, or sit without adjustment. JA0126-27. She further testifies that she has pain that radiates down her leg. JA0126. In addition, medical

---

[6]    Congress passed the ADA Amendments Act ("ADAAA") in 2008. Because Plaintiff's termination occurred after the ADAAA became effective, January 1, 2009, these amendments apply to her ADA claim, which the parties acknowledge. *See* ADA Amendments Act of 2008, Pub. L. No. 110–325, § 4(a), 122 Stat. 3553, 3555.

documentation included in the record reflects that Plaintiff received a steroid injection treatment for her back on July 31, 2013, the day before her drug test. [7]  JA0015.  Particularly in light of the ADAAA's "command to construe 'disability' broadly," *Estate of Murray v. UHS of Fairmont, Inc.*, 2011 WL 5449364, at *6 (E.D. Pa. Nov. 10, 2011), the Court finds that Plaintiff has presented sufficient, though admittedly limited, evidence to establish a material question as to whether she was actually disabled.

The Court likewise finds that Plaintiff has established, for the purposes of summary judgment, a material question as to whether she was "regarded as" disabled by Defendant. Plaintiff testifies that after she learned of the failed drug test results, she disclosed her back condition to Mruk.  JA0106, 0113.  Although the parties dispute the precise date on which this conversation occurred, it is undisputed that Plaintiff's termination occurred only days later.  It is also undisputed that Mruk was involved in the decision to terminate Plaintiff's employment with Defendant.  JA0149.  Such close temporal proximity between when Plaintiff alleges she disclosed her disability to Defendant and when Defendant terminated Plaintiff is sufficient evidence to overcome summary judgment here and create a material question as to whether Defendant regarded Plaintiff as disabled.  *See, e.g.*, *Warshaw v. Concentra Health Servs.*, 719 F. Supp. 2d 484, 495-96 (E.D. Pa. 2010) (finding a material issue of fact in the record as to whether plaintiff was "regarded as" disabled, where approximately two weeks elapsed between when the employer became aware of plaintiff's disability and when plaintiff was removed from his

---

[7]	After the close of summary judgment briefing and oral argument on Defendant's motion, the parties indicated that a substantial volume of Plaintiff's medical records, which contain numerous references to Plaintiff's back pain, were not included in the summary judgment record.  Both parties attached these records to supplemental letters presented to the Court.  However, neither party took a clear position, when asked by the Court at an in-person status conference, as to whether the Court should consider the records on summary judgment.  Given the evidence already included in the summary judgment record that was timely filed with the parties' briefs, the Court finds it unnecessary to address these records for purposes of its summary judgment decision.

assignment.)

Turning to the second element of Plaintiff's *prima facie* case, Defendant concedes that Plaintiff is qualified to perform the essential functions of the Administrative Coordinator position.  *See, e.g.*, Def.'s Br. 14 ("Plaintiff was objectively qualified and capable of performing all . . . work activities at SOAR.")  Defendant's motion also does not appear challenge that Plaintiff has carried her burden as to the third element of her *prima facie* case, and the record contains evidence sufficient to show at least a disputed issue of material fact as to the actual reason for Plaintiff's termination.  Therefore, while the evidence here is admittedly thin, Plaintiff nevertheless has established for the purpose of summary judgment a *prima facie* case of discrimination.

ii.   *Defendant's legitimate, non-discriminatory reason*

Having found, for purposes of summary judgment, that Plaintiff has made a *prima facie* case of discrimination, the burden shifts to Defendant to offer a legitimate, non-discriminatory reason for Plaintiff's termination.  Defendant argues that Plaintiff was terminated for falsifying references and falsifying work history information.  Def.'s Br. 18.  Plaintiff does not appear to challenge that Defendant has carried its burden at this stage of the analysis.

iii.   *Pretext*

The burden then shifts back to Plaintiff to show that Defendant's proffered reason was pretext for discrimination.  To show that the legitimate, non-discriminatory reason offered by a defendant was pretext, "the plaintiff must point to some evidence, direct or circumstantial, from which a factfinder could reasonably either (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action."  *Estate of Murray*, 2011 WL

5449364, at *10 (citing *Fuentes v. Perskie*, 32 F.3d 759, 764 (3d Cir. 1994)).

Plaintiff offers several pieces of evidence that discredit Defendant's assertion that Plaintiff was fired for falsification of references and work history.  For example, Mruk's efforts to contact Plaintiff's references and verify her employment were limited.  When Mruk called the telephone number Plaintiff listed for Interstock Cabinetry, and the individual answering the phone said "Labor Ready," Mruk never confirmed whether she was even calling the correct business.  JA0156-57.  When Mruk called Lockheed Martin, she never asked whether the manager listed by Plaintiff could be found on a roster of Lockheed employees.  JA0158-59.  And what's more, when Mruk had difficulty reaching Plaintiff's references and verifying her employment, Mruk did not address the issue with Plaintiff at all before recommending her termination.  JA0159-60.

To the extent that a factfinder deems Plaintiff credible, her suggested timeline of events also may call into question Defendant's explanation for Plaintiff's termination.  According to Plaintiff, she was originally given until the end of August to provide employment reference information.  JA0101.  Once Mruk received Plaintiff's failed drug test results and learned of Plaintiff's back conditions on August 12, 2013, Mruk moved up the deadline for Plaintiff to provide her reference information by several weeks.  JA0018, JA100-02.  Defendant then terminated Plaintiff by the end of that same week.  JA0095, 0100-02, 107-08.  Defendant's sudden pressing need for Plaintiff's reference information *after* Plaintiff allegedly disclosed her back conditions certainly casts at least some doubt on Defendant's explanation.

Based on this evidence, and construing the facts in the light most favorable to Plaintiff, a reasonable jury could find Defendant's proffered reasons for Plaintiff's termination to be pretext.  Accordingly, Defendant's motion is denied as to Plaintiff's claim for disparate treatment.

### b.        Failure to accommodate

Plaintiff also asserts a claim that Defendant failed to accommodate her disability by refusing to excuse her positive drug test after she provided documentation of physician-prescribed medication.  *See* Pl.'s Compl.; Pl.'s Resp. Br. 5.  For Plaintiff's failure to accommodate claim to overcome summary judgment, she must point to evidence of record sufficient to establish: "(1) the employer knew about the employee's disability; (2) the employee requested accommodations or assistance for [her] disability; (3) the employer did not make a good faith effort to assist the employee in seeking accommodations; and (4) the employee could have been reasonably accommodated but for the employer's lack of good faith." *Taylor v. Phoenixville Sch. Dist.*, 184 F.3d at 319-20.  The request "does not have to be in writing, be made by the employee, or formally invoke the magic words 'reasonable accommodation,'" but it "nonetheless must make clear that the employee wants assistance for his or her disability." *Id.* at 313.

First, there is evidence in the record to create an issue of material fact as to whether Defendant knew of Plaintiff's back conditions.  Plaintiff testifies that she informed Mruk of her conditions.  JA0106, 0113.  Plaintiff also submitted to Mruk medical documentation indicating that Plaintiff recently had a procedure on her back and that she was taking pain medication related to an "orthopedic condition."  JA0015-17.

There is also evidence in the record from which a reasonable jury could conclude that Plaintiff made a request for an accommodation, though this evidence is less clear.  Plaintiff testified both that Mruk "requested" documentation from Plaintiff and "asked questions" about whether Plaintiff could get documentation to verify her condition, and that Plaintiff "volunteered" to go to the doctor and get documentation.  JA0106.  Mruk's testimony is also

vague as to how the conversation transpired.  JA0154.  But construing the evidence in a light most favorable to Plaintiff, a reasonable jury could conclude that Plaintiff requested an accommodation when she asked whether she would be permitted to collect medical documentation to explain her failed drug test.

Once an employee makes an accommodation request, an employer must engage in an "interactive process" with the employee, whereby the two parties attempt to identify an appropriate, reasonable accommodation.  *Taylor*, 184 F.3d at 312; *see also Jones v. United Parcel Serv.*, 214 F.3d 402, 407 (3d Cir. 2000).  The employer's engagement in this interactive process demonstrates its good faith effort to assist the employee.  *Taylor*, 184 F.3d at 312. Importantly, at this stage, the employer must take some initiative.  *Id.* at 315.  Once an employer becomes aware of a disability and the employee's desire for an accommodation, the employer must then seek additional information, if necessary.  *See id.* at 314-17.  For example, the employer could follow up with an employee's physician or discuss potential accommodations with the employee directly.  *See id.* An employer's delay or obstruction of, or failure to communicate during, the interactive process may indicate bad faith.  *Id.* at 312 (citing *Bultemeyer v. Fort Wayne Cmty. Schs*, 100 F.3d 1281 (7th Cir. 1996)).

Construing the evidence in the light most favorable to Plaintiff, Plaintiff has established a material dispute of fact as to whether Defendant engaged in the interactive process.  Defendant argues that Plaintiff was permitted to continue working, despite her failed drug test, once she provided medical documentation of her prescribed medications.  But Plaintiff contends that shortly after providing medical documentation to Defendant, she was told that there were "still concerns with the medications she was taking."  JA0041.  Whether everyone involved in the decision to terminate Plaintiff was even made aware of Plaintiff's medical documentation is

unclear on the record.

Last, Defendant does not appear to dispute that Plaintiff could have been reasonably accommodated; the dispute centers on whether such an accommodation was, in fact, provided. *See, e.g.*, Def.'s Statement Facts ¶ 52.  Summary judgment will therefore be denied on this claim. *Taylor,* 184 F.3d at 318 ("[W]here there is a genuine dispute about whether the employer acted in good faith, summary judgment will typically be precluded.")

## IV.    CONCLUSION

Finding material facts in dispute, Defendant's Motion for Summary Judgment is denied. An appropriate Order follows.